# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **Brian Moffat Private Data LLC,** | **Case No. 2:25-cv-316** |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| **v.** | |
| **Tresorit AG,** | |
| **Defendant.** | |

## ORIRGINAL COMPLAINT FOR PATENT INFRINGEMENT

Brian Moffat Private Data LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Tresorit AG ("Tresorit" or "Defendant"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.     Brian Moffat Private Data LLC is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 119 W. Ferguson St, Tyler, Texas 75702.

2.     Upon information and belief, Tresorit AG is a company organized and existing under the laws of Switzerland with its principal place of business at Pfingstweidstrasse 60b, CH-8005 Zurich, Switzerland.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

4.     This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of Texas.  Defendant transacts business within this District and

elsewhere in the State of Texas. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of patent-in-suit in this District and elsewhere in the State of Texas.

5.      Upon information and belief, Defendant transacts substantial business in the State of Texas and this Judicial District.  Defendant has committed acts of infringement in this District by, among other things, offering to sell and selling products that infringe the asserted patents, including the accused products as alleged herein, as well as providing service and support to its customers in this District.  Upon information and belief, Defendant, directly or indirectly, participates in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas.

6.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, Defendant is subject to personal jurisdiction in this Judicial District, Defendant has regularly conducted business in this Judicial District, certain of the acts complained of herein occurred in this Judicial District, and Defendant is not a resident in the United States and may be sued in any judicial district.

**BACKGROUND AND PATENTS-IN-SUIT**

7.      Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 9,015,281 ("the '281 Patent"), 9,397,983 ("the '983 Patent"), 10,187,347 ("the '347 Patent"), 11,134,050 ("the '050 Patent"), and 11,637,802 ("the '802 Patent") (collectively, the "Asserted Patents").

**The '281 Patent**

8.      The '281 Patent relates to ensuring the privacy and security of users' personal information while using general data sharing networks.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                              2

9.      By operation of law, the '281 Patent originally issued and exclusively vested to the named inventor, Moffat, as of the issue date of the '281 Patent. *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014). The inventors, in a written instrument, and filed with the United States Patent and Trademark Office, assigned all rights, title, and interest in the Asserted Patents to Brian Moffat Private Data LLC.

10.     The '281 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

11.     The inventions described and claimed in the '281 Patent were invented individually and independently by Moffat.

12.     The '281 Patent includes numerous claims defining distinct inventions. As represented in Fig. 1 of the '281 Patent below, the inventions generally relate to ensuring the privacy and security of users' personal information while using data sharing networks.



13. The priority date of the '281 Patent is at least as early as October 8, 2010.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

14. At the time of the inventions of the '281 Patent, one of the greatest hindrances to the greater adoption and utility of Social networks was the lack of adequate security and privacy, both perceived and real. There was a long-felt need for secure social networks in which only users, and the "friends' that those users specify, are able to gain access to the users personal and/or private data. By limiting access to a user's PID ("personally identifiable data or information") to the user who created it, and to the friends of that user, both the real and the perceived privacy and security of that potentially sensitive information are increased. Online social networks (OSN's) represent one specialized version of more general data sharing (systems or) networks (DSSs). Many organizations require the ability to share data among and between their members. For instance, many businesses must archive and share digital information among their employees, for instance, data regarding past and current clients, company policies and resources, documentation of procedures and methods, etc. Many governmental organizations must archive and share digital information among their staff, for instance, memos, analyses, projections, policies and directives. Many law enforcement agencies must archive and share digital information related to criminal investigations, Suspects, tips, etc. Even some large health care organizations must archive and share digital information among doctors and staff related to patients, the results of medical tests and procedures, insurance claims and policies, etc. Shared online data archives typically do not provide at least some of the server functionalities which are characteristic of the operation and utilization of OSN's and DSS's. These missing functionalities typically include: (1) The tools to directly create, edit, view, and otherwise manipulate, the files being stored. (While shared online archives often provide notification of newly uploaded and updated files, they do not directly

provide the user with the tools required to display or edit the associated content.) (2) The direct exchange of messages between users within the shared online archives, e.g. chat and/or email. (3) The generation, distribution and display of comments, separate from, and not necessarily related to, any particular file(s) in these shared repositories. (4) The visual and/or organizational discrimination of data by data type, e.g. the segregation of photos and/or other image files, the segregation of videos, etc. (5) The automated hiding or deletion of "old" media (in fact, this type of social functionality would be completely inappropriate within the context of a shared online archive, wherein files should only be deleted by the users themselves). *See* '281 Patent at 2:10-40 and 5:15-35.

15.    It was the inventions of the '281 Patent that allow users and their specified contacts to have sole access to the data which those users create, modify and/or upload. The exclusive and proprietary access of a user, and that user's designated contacts and/or friends, to the user's data within the context of a data presentation and/or editing system is a novel aspect of the present disclosure. Another novel aspect of the invention is the specification of a DSS in which each user's data is obfuscated in a unique manner, and each user's obfuscated data can be shared with that user's contacts and/or friends in a secure and convenient manner because each user's contacts and/or friends are provided, a priori, with the unique means required to de-obfuscate that user's data. Convenience is achieved by means of a client program which stores the set of de-obfuscation means required by a user to de-obfuscate the obfuscated data which may be generated and shared by each of the user's contacts and/or friends. Convenience may be further increased through the use of an automated means of exchanging Such user-specific means of data de-obfuscation between contacts. *See* '281 Patent at 5:35-55.

16.    The '281 Patent is pioneering and has been, respectively, cited as relevant prior art in 188 subsequent United States Patent Applications, including technology leaders and academia as Hitachi, Ltd., Microsoft Corporation, Samsung Electronics Co., Ltd., Jayant Shukla, and Yoshihiro Hori.

**<u>The '983 Patent</u>**

17.    The '983 Patent seeks to ensure the privacy and security of users' personal information while using general data sharing networks.

18.    By operation of law, the '983 Patent originally issued and exclusively vested to the named inventor, Moffat, as of the issue date of the '983 Patent.  *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014).  The inventors, in a written instrument, and filed with the United States Patent and Trademark Office, assigned all rights, title, and interest in the Asserted Patents to Brian Moffat Private Data LLC.

19.    The '983 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

20.    The inventions described and claimed in the '983 Patent were invented individually and independently by Moffat.

21.    The '983 Patent includes numerous claims defining distinct inventions. As represented in Fig. 22 of the '983 Patent below, the inventions generally relate to privacy and security of users' personal information while using general data sharing networks.



FIG. 22

22.    The priority date of the '983 Patent is at least as early as October 8, 2010.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

23.    At the time of the inventions of the '983 Patent, some social networks were intended to promote non-specific Social interactions, e.g. Facebook (which is a general online Social network) and MySpace (which is also a general online social network). Others were intended to facilitate specialized types of interactions. For instance, Some Social networks are intended to help business people promote themselves, their services and/or their businesses. An example thereof is LinkedIn, which is an online Social network dedicated to promoting "business and professional networking Some social networks promote the interaction, and mutual Support, of people who have all shared, or are all sharing, a common type of hardship. An example thereof is CaringBridge, which is a charitable nonprofit organization offering free personalized websites to people facing a serious medical condition or hospitalization, undergoing medical treatment and/or recovering from a significant accident, illness, injury or procedure. Its functionality is similar to a blog. And, Some are designed to coordinate and support the efforts, and share the work, of people who share a

common passion. Examples thereof are Care2 ("green living and social activism') and Flickr (dedicated to sharing photos). Some Social networks promote other types of topic-specific or domain-specific Social interactions. *See* '983 Patent at 1:45-65 and 2:1-10.

24.    It was the inventions of the '983 Patent that sought to ensure the privacy and security of users' information. In this invention, a user's information is stored and transmitted (with only a few exceptions) in an obfuscated (e.g. an encrypted) form. And, the only means (e.g. decryption key) with which the encrypted data can be de-obfuscated (e.g. decrypted), and thus viewed, is always in the sole pos session of the user and the user's contacts. This arrangement ensures that a user's data cannot be examined by anyone other than the user or the user's contacts. This arrangement also makes it more difficult for the web site, or other commercial provider (if any), hosting a private DSS to exploit its users' data. Accordingly, such a system, which facilitates the obfuscation, storage, exchange and de obfuscation of personal, confidential and/or proprietary data, offers many advantages over existing data sharing networks and/or systems. *See* '983 Patent at 6:25-40.

25.    The '983 Patent is pioneering and has been, respectively, cited as relevant prior art in 188 subsequent United States Patent Applications, including technology leaders and academia as Hitachi, Ltd., Mitsubishi Denki Kabushiki Kaisha, Microsoft Corporation, and Oracle America, Inc.

## The '347 Patent

26.    The '347 Patent relates to seeks to ensure the privacy and security of users' personal information while using general data sharing networks.

27.    By operation of law, the '347 Patent originally issued and exclusively vested to the named inventor, Moffat, as of the issue date of the '347 Patent.  *See* 35 U.S.C. § 261; *Schwendimann v.*

*Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014).  The inventors, in a written instrument, and filed with the United States Patent and Trademark Office, assigned all rights, title, and interest in the Asserted Patents to Brian Moffat Private Data LLC.

28.    The '347 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

29.    The inventions described and claimed in the '347 Patent were invented individually and independently by Moffat.

30.    The '347 Patent includes numerous claims defining distinct inventions. As represented in Figs. 1 and 2 of the '347 Patent below, the inventions generally relate to seeks to ensure the privacy and security of users' personal information while using general data sharing networks.



31.     The priority date of the '347 Patent is at least as early as October 8, 2010.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

32.     At the time of the inventions of the '347 Patent, data stored on the computing devices of users was typically not encrypted. However, the data stored on the centralized storage device(s), and the data transmitted across the Internet, is often encrypted. The data storage company typically provides the encryption key used to achieve the encryption, and this intermediate state of encryption is typically hidden from the user. In fact, the user is usually unaware of the encryption method and the value of the encryption key used. The computers, servers and/or programs of the centralized shared data storage web sites are often in possession of the encryption key(s) used to encrypt the user data, and are often able at any time to decrypt and examine that data. In fact, these sites regularly compare the unencrypted data in their stores, with the data stored on the users' computing, and/or storage devices, in order to detect any differences that need to be shared with the other users who have access to that data. Users of these communal online repositories are able to share files of data, which can include photos, movies, audio files, text documents and so forth. And, users who elect to share one of these communal online repositories are often notified of any changes to the contents of the shared repositories, or to the contents of the individual files stored within those repositories. However, this is typically the extent of the "social" functionality provided by these companies, and this functionality is typically only provided to the extent that it facilitates the sharing of digital computer files among and between their users. *See* '347 Patent at 3:40-65.

33. It was the inventions of the '347 Patent to ensure the privacy and security of users' information. In this new type of DSS, a user's information is stored and transmitted in an obfuscated form. And, the only means with which the encrypted data can be de-obfuscated, and thus viewed, is always in the sole possession of the user and the user's contacts. This arrangement ensures that a user's data

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                      10

cannot be examined by anyone other than the user or the user's contacts. An embodiment herein uses user-specified encryption to limit overall access to the user's data. It then allows the centralized system to control distribution of each piece of encrypted data to the subset of the user's total set of friends that the user specifies. An embodiment herein advocates "trusting" the central system to make dynamic changes to user data distribution since the content is already encrypted and privacy is implicitly limited to the user's total pool of friends. In other words, the risk of "system betrayal of trust" is low because there is no motivation for the system to misdirect encrypted user content. *See* '347 Patent at 6:40-65.

34.    The '347 Patent is pioneering and has been, respectively, cited as relevant prior art in 188 subsequent United States Patent Applications, including technology leaders and academia as Hitachi, Ltd., Microsoft Corporation, 3Com Corporation, Yoshihiro Hori, International Business Machines Corporation, and Pioneer Research Center Usa, Inc.

### The '050 Patent

35.    The '050 Patent relates to ensuring the privacy and security of users' personal information while using general data sharing networks.

36.    By operation of law, the '050 Patent originally issued and exclusively vested to the named inventor, Moffat, as of the issue date of the '050 Patent. *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014). The inventors, in a written instrument, and filed with the United States Patent and Trademark Office, assigned all rights, title, and interest in the Asserted Patents to Brian Moffat Private Data LLC.

37.    The '050 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

38.    The inventions described and claimed in the '050 Patent were invented individually and independently by Moffat.

39.    The '050 Patent includes numerous claims defining distinct inventions. As represented in Fig. 12 of the '050 Patent below, the inventions generally relate to ensuring the privacy and security of users' personal information while using general data sharing networks.



40.    The priority date of the '050 Patent is at least as early as October 8, 2010.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

41.    At the time of the inventions of the '050 Patent, shared online data archives did not provide at least some of the server functionalities which are characteristic of the operation and utilization of OSN's and DSS's. These missing functionalities typically include: (1) The tools to directly create, edit, view, and otherwise manipulate, the files being stored. (While shared online archives often provide notification of newly uploaded and updated files, they do not directly provide the user with the

tools required to display or edit the associated content.) (2) The direct exchange of messages between users within the shared online archives, e.g. chat and/or email. (3) The generation, distribution and display of comments, separate from, and not necessarily related to, any particular file(s) in these shared repositories. (4) The visual and/or organizational discrimination of data by data type, e.g. the segregation of photos and/or other image files, the segregation of videos, etc. (5) The automated hiding or deletion of "old" media (in fact, this type of social functionality would be completely inappropriate within the context of a shared online archive, wherein files should only be deleted by the users themselves). *See* '050 Patent at 5:20-40.

42. It was the inventions of the '050 Patent to provide the basis for the implementation of secure data sharing, and social, networks in which only users and their specified contacts and/or friends are able to access the users' personal and/or private data. By limiting access to a user's data to the user who created it, and to the contacts and/or friends of that user, both the real and the perceived privacy and security of that potentially sensitive information are increased. In an embodiment, a separate set of computers, servers and/or programs has the ability to review discrete elements of user data in order to check for abusive data and/or abusive behavior. And, in the event that abuse is detected, that same separate set of computers, servers and/or programs can retrieve, via a user's DSS client, the decryption key(s) of that user, in order to decrypt and archive that user's data and thereby make it available to, for example, the proper law enforcement agencies. However, this should not diminish the privacy and security provided to users who are not engaged in abusive behavior. An embodiment herein does not facilitate, or even permit, the reconstitution of original user data for the purposes of inspection, analysis, selling and/or any other exploitative activity, on the part of the owners and/or operators of the DSS. *See* '050 Patent at 6:5-30.

43.     The '050 Patent is pioneering and has been, respectively, cited as relevant prior art in 188 subsequent United States Patent Applications, including technology leaders and academia as Hitachi, Ltd., Microsoft Corporation, Samsung Electronics Co., Ltd., Yoshihiro Hori.

### The '802 Patent

44.     The '802 Patent relates to ensuring the privacy and security of users' personal information while using general data sharing networks.

45.     By operation of law, the '802 Patent originally issued and exclusively vested to the named inventor, Moffat, as of the issue date of the '802 Patent.  *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014).  The inventors, in a written instrument, and filed with the United States Patent and Trademark Office, assigned all rights, title, and interest in the Asserted Patents to Brian Moffat Private Data LLC.

46.     The '802 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

47.     The inventions described and claimed in the '802 Patent were invented individually and independently by Moffat.

48.     The '802 Patent includes numerous claims defining distinct inventions. As represented in Fig. 7 of the '802 Patent below, the inventions generally relate to ensuring the privacy and security of users' personal information while using general data sharing networks.



49.    The priority date of the '802 Patent is at least as early as October 8, 2010.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

50.    At the time of the inventions of the '802 Patent, in the present private DSS design the user data is encrypted at all times except when being viewed by the user, or by the user's designated contacts and/or friends. Unlike other DSS's in which a user's data can be viewed, analyzed and/or exploited by the owners of the DSS, or its employees, in this novel private DSS only the users themselves possess the decryption keys needed to decrypt their data. *See* '802 Patent at 19:45-55

51. It was the inventions of the '802 Patent that embody the portion of the private DSS which operates locally, on a user's computing device, and is referred to as the "DSS client." Following a successful system log in (achieved through the submission of a valid username and password) the DSS client is responsible for receiving from a user that user's primary encryption key (or passphrase). The DSS client also mediates the exchange of user decryption keys between two users, when those users elect to become contacts or friends of one another, i.e. when they elect to share their data. The DSS client also decrypts all encrypted user data and contact data which it receives from the

computers, servers, and/or programs which form the server of the DSS, which are henceforth referred to only as the "DSS server." It then composes the decrypted graphics, text and/or other types of media, within a user interface, on a user's computing device, thereby allowing the user to view, read, edit and/or otherwise interact with those that data and/or media. The DSS client also allows users to create some, or all, of the types of media which it is capable of sharing between users, or otherwise processing. And, the invention also encrypts new data which the user creates, edits, uploads, or otherwise introduces to the system. The DSS client then transmits these new and encrypted packets of user data to the DSS server for storage, dissemination to contacts, and/or other types of processing. *See* '802 Patent at 19:60-65 and 20:1-15.

52. The '802 Patent is pioneering and has been, respectively, cited as relevant prior art in 188 subsequent United States Patent Applications, including technology leaders and academia as Mitsubishi Material Corporation, Sony Computer Entertainment, Toshihiro Maruyama, Xerox Corporation, and Cellco Partnership.

## DEFENDANT'S INFRINGING PRODUCTS

53. Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides data sharing methods and systems, including, but not limited to, its Tresorit FileSharing platform and other data sharing products ("Accused Instrumentalities"), that utilize the Asserted Patents' patented data sharing methods and systems.

54. As shown below, and as an example and with more detail in Exhibit A attached hereto, the Accused instrumentalities include each and every limitation of at least, but not limited to, claim 1 of the Asserted Patents, and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                  16



55.    As shown, Defendant's products include each and every limitation of at least, but not limited to, claim 1 of the Asserted Patents and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

## COUNT I
## Infringement of U.S. Patent No. 9,015,281

56.    Plaintiff incorporates the above paragraphs by reference.

57.    Defendant without authority, made, used, sold, offered to sell, and/or imported into the United States its Accused Instrumentalities as shown above.

58.    Defendant thus has infringed at least claim 1 of the '281 Patent literally and/or under the doctrine of equivalents.

59.    In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                17

of others first for clearance or to assess infringement thereof prior to launching products and services. As such, Defendant has been willfully blind to the patent rights of Plaintiff. Defendant's direct and indirect infringement of the '281 Patent has thus been committed with knowledge of the '281 Patent, making Defendant liable for direct, indirect, and willful infringement.

60.    Defendant has also actively induced  the infringement of at least one of claim 1 of the '281 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '281 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '281 Patent.

61.    Defendant individually, collectively, or through others or intermediaries, has contributorily infringed in violation of 35 U.S.C. § 271(c), at least one claim of the '281 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '281 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '281 claims.

62.    Plaintiff has been damaged because of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

63.    Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## COUNT II
## Infringement of U.S. Patent No. 9,397,983

64.    Plaintiff incorporates the above paragraphs by reference.

65.    Defendant without authority, made, used, sold, offered to sell, and/or imported into the United States its Accused Instrumentalities as shown above.

66.    Defendant thus has infringed at least claim 1 of the '983 Patent literally and/or under the doctrine of equivalents.

67.    In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services. As such, Defendant has been willfully blind to the patent rights of Plaintiff. Defendant's direct and indirect infringement of the '983 Patent has thus been committed with knowledge of the '983 Patent, making Defendant liable for direct, indirect, and willful infringement.

68.    Defendant has also actively induced  the infringement of at least one of claim 1 of the '983 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '983 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '983 Patent.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                      19

69.    Defendant individually, collectively, or through others or intermediaries, has contributorily infringed in violation of 35 U.S.C. § 271(c), at least one claim of the '983 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '983 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '983 claims.

70.    Plaintiff has been damaged because of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

71.    Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## COUNT III
## Infringement of U.S. Patent No. 10,187,347

72.    Plaintiff incorporates the above paragraphs by reference.

73.    Defendant without authority, made, used, sold, offered to sell, and/or imported into the United States its Accused Instrumentalities as shown above.

74.    Defendant thus has infringed at least claim 1 of the '347 Patent literally and/or under the doctrine of equivalents.

75.    In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services. As such, Defendant has been willfully blind to the patent rights of Plaintiff. Defendant's

direct and indirect infringement of the '347 Patent has thus been committed with knowledge of the '347 Patent, making Defendant liable for direct, indirect, and willful infringement.

76.    Defendant has also actively induced  the infringement of at least one of claim 1 of the '347 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '347 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '347 Patent.

77.    Defendant individually, collectively, or through others or intermediaries, has contributorily infringed in violation of 35 U.S.C. § 271(c), at least one claim of the '347 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '347 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '347 claims.

78.    Plaintiff has been damaged because of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

79.    Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

## COUNT IV
## Infringement of U.S. Patent No. 11,134,050

80.    Plaintiff incorporates the above paragraphs by reference.

81.    Defendant without authority, made, used, sold, offered to sell, and/or imported into the United States its Accused Instrumentalities as shown above.

82.    Defendant thus has infringed at least claim 1 of the '050 Patent literally and/or under the doctrine of equivalents.

83.    In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services. As such, Defendant has been willfully blind to the patent rights of Plaintiff. Defendant's direct and indirect infringement of the '050 Patent has thus been committed with knowledge of the '050 Patent, making Defendant liable for direct, indirect, and willful infringement.

84.    Defendant has also actively induced  the infringement of at least one of claim 1 of the '050 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '050 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '050 Patent.

85.    Defendant individually, collectively, or through others or intermediaries, has contributorily infringed in violation of 35 U.S.C. § 271(c), at least one claim of the '050 Patent by making, using,

offering for sale, selling, and/or importing, material parts of the inventions claimed in the '050 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '050 claims.

86.    Plaintiff has been damaged because of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

87.    Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

**COUNT V**
**Infringement of U.S. Patent No. 11,637,802**

88.    Plaintiff incorporates the above paragraphs by reference.

89.    Defendant without authority, made, used, sold, offered to sell, and/or imported into the United States its Accused Instrumentalities as shown above.

90.    Defendant thus has infringed at least claim 1 of the '802 Patent literally and/or under the doctrine of equivalents.

91.    In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services. As such, Defendant has been willfully blind to the patent rights of Plaintiff. Defendant's direct and indirect infringement of the '802 Patent has thus been committed with knowledge of the '802 Patent, making Defendant liable for direct, indirect, and willful infringement.

92.    Defendant has also actively induced  the infringement of at least one of claim 1 of the '802 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '802 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '802 Patent.

93.    Defendant individually, collectively, or through others or intermediaries, has contributorily infringed in violation of 35 U.S.C. § 271(c), at least one claim of the '802 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '802 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '802 claims.

94.    Plaintiff has been damaged because of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

95.    Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1.      Declaring that Defendant has infringed the Asserted Patents;

2.      Awarding Plaintiff its damages suffered because of Defendant's infringement of the Asserted Patents;

3.      Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

4.      An award to Plaintiff of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the Asserted Patents; and

5.      Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/ Christopher A. Honea*
M. Scott Fuller
     Texas Bar No. 24036607
     sfuller@ghiplaw.com
Randall Garteiser
     Texas Bar No. 24038912
     rgarteiser@ghiplaw.com
Christopher A. Honea
     Texas Bar No. 24059967
     chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT